**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

TEREY SHULTZ,

    Plaintiff,

v.

FRONTIER AIRLINES, INC., a Colorado corporation, and
COMMUNICATIONS WORKERS OF AMERICA, d/b/a ASSOCIATION OF FLIGHT ATTENDANTS-CWA,

    Defendants.

_____

**COMPLAINT**
_____

Plaintiff Terey Shultz, by and through counsel, states the following Complaint against the above-named Defendants.

**JURISDICTION AND PARTIES**

1.    Plaintiff Terey Shultz is a citizen of the United States with residences in the states of Colorado and Nebraska.

2.    Defendant Frontier Airlines, Inc. is a Colorado corporation with its principal place of business in Indianapolis, Indiana. Its primary "hub" is Denver, Colorado.

3.    Defendant Communications Workers of America, d/b/a Association of Flight Attendants-CWA (AFA or AFA International) is a labor union representing flight attendants in the United States and an affiliate of AFL-CIO.

4.    Plaintiff is a former employee of Frontier Airlines and member of AFA, and AFA local, Council 71.

5. The claims brought herein are based on conduct occurring within the State of Colorado.

6. This is an action brought pursuant to the Railway Labor Act, 45 U.S.C. §§ 151-188. The Court's jurisdiction over this action is invoked pursuant to 28 U.S.C § 1331. Supplemental jurisdiction over the state-law claims is invoked pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates by reference the allegations set forth above in paragraphs one through seven.

9. Plaintiff was hired by Defendant Frontier Airlines as a Ramp Agent in December 2002.

10. Plaintiff transferred into the position of Flight Attendant on or about January 2, 2004. From that time until the date of his termination Plaintiff was continuously employed by Frontier Airlines as a Flight Attendant.

11. A Collective Bargaining Agreement (or, "CBA") between Defendants was ratified by AFA with pending revisions in or about November 2011. At this time, union dues started to accrue.

12. The current CBA, with changes included, was ratified in March 2012.

13. Plaintiff became a member of Defendant Association of Flight Attendants-CWA and Council 71 in late March 2013. He paid his initiation fee on March 31, 2013.

14. Approximately 300 Frontier Flight Attendants withheld dues from the date of the first ratification in protest of certain provisions in the Collective Bargaining Agreement.

15. In or about May 2013, AFA started to pressure Frontier Airlines to encourage Flight Attendants to get current on their dues payments.

16. In early June 2013 Frontier Manager of Employee Relations Tyler Bartlett and Director of Inflight Eva Durham called Plaintiff and informed him that he was on the delinquent dues list.

17. Mr. Bartlett and Ms. Durham instructed Plaintiff to contact then-AFA Council 71 Secretary-Treasurer Jerry Johnson.

18. Plaintiff left a message with Mr. Johnson, asking for a contact number for AFA International. Mr. Johnson instructed Plaintiff to contact Karen Lee at International to make arrangements to pay his delinquent dues.

19. Plaintiff made contact with Karen Lee with whom he entered into a verbal agreement to pay current dues on the sixth of each month and pay "as much as possible" on delinquent dues on the 21st of each month.

20. Ms. Lee informed Plaintiff that he would be required to sign "some paperwork" pursuant to the agreement.

21. Ms. Lee agreed to send the paperwork to Plaintiff via email as he was working a flight to Costa Rica that night.

22. Upon arriving at the crew's hotel Plaintiff checked and had received an email from Ms. Lee; however, though the email indicated that it included an attachment, it did not.

23. Plaintiff immediately called Ms. Lee, leaving her a voice message asking her to send another email that included the attachment.

24. Plaintiff never received another email from Ms. Lee.

3

25. Plaintiff made every payment pursuant to the agreement that he had reached with Ms. Lee on time; as to the delinquent dues, Plaintiff always paid an amount equal to or greater than one month's dues.

26. Early in August, Mr. Bartlett called and told Plaintiff that he was still on the delinquent dues list.

27. Plaintiff told Mr. Bartlett that he had made every payment pursuant to the agreement and asked how to get off the list.

28. Mr. Bartlett told Plaintiff that there was no concern so long as he had proof of payment.

29. Plaintiff made numerous calls to Mr. Johnson and then-Council 71 President Kathie Weis, never receiving a response of any kind.

30. Council 71 Grievance Officer Jeanie Messina told Plaintiff just to continue making payments and keep documentation of the payments and there would be no problem.

31. On August 8, 2013, AFA International sent a request for termination letter to Frontier Airlines.

32. On August 10, returning from a work trip to Costa Rica, Frontier Airlines terminated Plaintiff's employment in a public area in the main terminal of Denver International Airport.

33. Upon being terminated, Plaintiff was provided with a "memo," dated August 8, 2013, from Manager of Employee Relations Bartlett, that stated the reason for termination was *"failure to comply with the terms and conditions of Article 17 of the Collective Bargaining Agreement."* (emphasis in original). Article 17 relates to union dues and dues payment

4

delinquencies. It provides a procedure for review of a discharge from employment based on "interpretation or application" of the other provisions of "this Section," ostensibly referring to Article 17.

34. The termination was effective immediately; Frontier Airlines required Plaintiff to turn over his badges and Flight Attendant manual.

35. Article 17(B) of the CBA provides, *inter alia*, that if a Flight Attendant becomes more than 30 days delinquent in paying his or her dues the AFA will send a Notice by certified mail to the address designated by the Flight Attendant for such purpose.

36. Article 17(B) also provides that the Flight Attendant will have a 15-day "grace period" starting from the date of the mailing of the Notice by the International Secretary-Treasurer in which to remit "the required payment" upon pain of discharge.

37. On August 12, Plaintiff called Ms. Lee to ask the reason for his termination, telling her that he had made all of his payments according to their agreement.

38. Ms. Lee informed Plaintiff that he was terminated because he had not signed a promissory note.

39. Plaintiff told Ms. Lee that he had never been informed of a promissory note requirement, nor had he been provided with a promissory note.

40. Ms. Lee told Plaintiff that she had sent it to him in Costa Rica with the email and that if he had not received it he should have contacted her; he told her that he did.

41. Ms. Lee told Plaintiff, for the first time, that without the signed note there was no agreement.

5

42. Plaintiff offered to pay the entire outstanding amount immediately so as to negate the need for a note.

43. Ms. Lee asked her supervisor, Bob Kenia, to inquire as to whether she could accept payment; Mr. Kenia said that she could not as Plaintiff had been terminated by Frontier Airlines.

44. Mr. Kenia also falsely stated that Plaintiff had only paid $25.00 towards his back dues.

45. Plaintiff made numerous calls to Ms. Lee over the next few days to prove to her that AFA International's numbers were incorrect, offering several times to pay the entire outstanding amount.

46. Plaintiff was given several different numbers from his contacts at the local and the International for his delinquent amount.

47. Ms. Lee told Plaintiff to contact Mr. Johnson at Council 71.

48. Mr. Johnson failed to respond to Plaintiff's numerous attempts to contact him.

49. Plaintiff contacted Ms. Lee again; she asked Plaintiff why he had not signed the promissory note that had been sent to him via certified mail.

50. Plaintiff asked who had signed for the letter; the name was Plaintiff's mother's; the note had been sent to Plaintiff's Nebraska address on March 23, 2013, but he had never been so informed until this conversation with Ms. Lee in August.

51. Plaintiff had never seen the letter and he had never been informed of it until this conversation.

52. In February 2013, Plaintiff had designated his Denver address to AFA as his "official" address for any union correspondence, as he rarely travels to Nebraska.

53. Plaintiff had received previous correspondence from AFA at his Denver address.

54. Plaintiff asked Grievance Officer Messina for help.

55. Ms. Messina reported back to Plaintiff that after speaking with several International and local AFA representatives, she had been given different reasons for his termination, but she could not help.

56. On August 16, 2013, Plaintiff hand-delivered a Request for Review, pursuant to Article 17(C) of the CBA, to Ms. Durham and Mr. Bartlett at Frontier Airlines.

57. Plaintiff received the written Review decision from Mr. Bartlett on August 24.

58. The decision stated that after inquiry with AFA Plaintiff was still deemed delinquent, back to March 2012, and the termination was affirmed "until I hear otherwise."

59. On August 26, Plaintiff left a voice message with Mr. Bartlett asking for clarification.

60. On August 27, Plaintiff called to discuss the termination status with Mr. Bartlett. Mr. Bartlett told Plaintiff that he had no disciplinary action against him and he was in good standing with Frontier Airlines. He told Plaintiff that if he paid his dues in full and had AFA send a reversal of termination letter, the two of them would discuss the process for reinstatement.

61. On August 28, Plaintiff called AFA International to make the payment and get the letter. He tried both Karen Lee and Bob Kenia, without success, but was given a number to call another International representative, Irell Thompson.

62. Plaintiff spoke to Ms. Thompson, telling her that Ms. Lee had the file on his issue.

7

He asked her to accept his payment in full and put him in good standing with AFA. He also asked her to send copies of the reversal of termination letter to Mr. Bartlett and to himself. She told him that this would be "no problem."

63. Ms. Thompson asked what address she should use to send his copy. He gave her his Denver address. She stated that letters get sent to the wrong addresses all the time, especially if a different address is on file with the airline. She asked him to fax a copy of his appeal letter and Mr. Bartlett's decision on the appeal. He complied immediately.

64. Plaintiff made the payment over the phone by credit card. He asked Ms. Thompson to send the reversal letter as soon as possible.

65. On August 29, Ms. Thompson called Plaintiff and told him that she had returned his payment and that Frontier Airlines had rejected the reversal letter.

66. On August 29, Plaintiff called Mr. Bartlett about the letter. Mr. Bartlett stated that he had not received anything from AFA International. He told Plaintiff that he would call AFA International and then call Plaintiff back.

67. On August 29, Plaintiff called Ms. Thompson about the letter. She told Plaintiff that Council 71 had rejected the reversal of termination; she refused to send Plaintiff a copy of the letter.

68. She told Plaintiff that she would put a copy of it in Plaintiff's file and provide it to Mr. Kenia and that Mr. Kenia would call Plaintiff when he returned from vacation on September 3. She said that she would no longer be able to assist Plaintiff.

69. On August 29, Plaintiff called Mr. Bartlett to relate his conversation with Ms. Thompson.

8

70. Mr. Bartlett told Plaintiff that he would be meeting with AFA on September 4 and would contact him after that.

71. Plaintiff never heard from Mr. Kenia or Mr. Bartlett.

72. In spite of many calls to, and messages left at, AFA International, Council 71 and Frontier Airlines, no one has contacted Plaintiff or responded to his pleas for help since Mr. Bartlett's statement that he would call him after the meeting with AFA.

## **FIRST CLAIM FOR RELIEF**
**(Breach of Collective Bargaining Agreement/Railway Labor Act – against Defendant Frontier Airlines)**

73. Plaintiff incorporates by reference the allegations set forth above in paragraphs one through 72.

74. At all times pertinent hereto, Frontier Airlines and Association of Flight Attendants-CWA operated subject to the terms of the Collective Bargaining Agreement known as Frontier Airlines Flight Attendant Contract (2011-2016).

75. As a member of AFA and an employee of Frontier Airlines, Plaintiff had certain rights as included in the provisions of the CBA between Defendants.

76. Several of the rights accruing to Plaintiff were the right to be noticed of any delinquent dues by certified mail delivered to his designated address; the right not to be terminated from employment until after a 15-day period elapsed after notice of termination; the right to a decision by the Director of Inflight pursuant to a Request for Review; and the right not to be terminated without just cause.

77. Frontier Airlines breached the CBA by violating Plaintiff's rights thereunder.

78. Frontier Airlines' breach of the CBA has caused and continues to cause Plaintiff economic loss, including backpay, front pay and benefits; losses due to damage to career; injury in the forms of emotional distress, humiliation, mental suffering; and losses in the form of consequential damages.

## SECOND CLAIM FOR RELIEF
### (Breach of Duty of Fair Representation – against Defendant AFA)

79. Plaintiff incorporates by reference the allegations set forth above in paragraphs one through 78.

80. At all times pertinent hereto, Defendant Association of Flight Attendants-CWA owed Plaintiff, as a member, a duty of fair representation.

81. Rather than fairly representing Plaintiff's interests as a member, AFA colluded with Frontier Airlines to procure his termination from employment, and in doing so, breached its duty to Plaintiff.

82. Defendant AFA's breach of duty of fair representation has caused and continues to cause Plaintiff economic loss, including backpay, front pay and benefits; losses due to damage to career; injury in the forms of emotional distress, humiliation, mental suffering; and losses in the form of consequential damages.

## THIRD CLAIM FOR RELIEF
### (Promissory Estoppel – against Defendant Frontier Airlines)

83. Plaintiff incorporates by reference the allegations set forth above in paragraphs one through 82.

84. Defendant Frontier Airlines, through its Manager of Employee Relations, Tyler Bartlett, represented to Plaintiff that it would meet with AFA and have answers for him in early September.

85. Defendant should have reasonably expected Plaintiff to rely on its representations and promises.

86. Plaintiff did reasonably rely on Defendant's representations and promises.

87. Plaintiff's reasonable reliance acted to his detriment in that Defendant's breached misrepresentations caused him economic loss and injury.

### FOURTH CLAIM FOR RELIEF
(Promissory Estoppel – against Defendant AFA)

88. Plaintiff incorporates by reference the allegations set forth above in paragraphs one through 87.

89. Defendant AFA, through its local and International agents, represented to and promised Plaintiff that if he made timely payments he would not be considered delinquent; and represented to Plaintiff that he would have an opportunity to follow up with the Union in early September.

90. Defendant should have reasonably expected Plaintiff to rely on its representations and promises.

91. Plaintiff did reasonably rely on Defendant's representations and promises.

92. Plaintiff's reasonable reliance acted to his detriment in that Defendant's breached promises and misrepresentations caused him economic loss and injury.

**WHEREFORE,** Plaintiff Terey Shultz asks this Court to enter judgment in his favor and against Defendants Frontier Airlines, Inc. and Association of Flight Attendants-CWA for economic loss, including backpay, front pay and benefits; losses due to damage to career; injury in the forms of emotional distress, loss of reputation, humiliation, mental suffering and inconvenience; equitable relief; other injunctive relief, including reinstatement; attorney fees and costs; expert fees, interest; and such other and further relief as this Court deems proper.

**PLAINTIFF DEMANDS TRIAL OF THIS CAUSE BY A JURY OF SIX**

Respectfully submitted this 27th day of November, 2013.

LAW OFFICE OF HUGH S. PIXLER, LLC

s/ *Hugh S. Pixler*
Hugh S. Pixler
1942 Broadway, Suite 314
Boulder, Colorado  80302
Telephone:  (303) 413-3464
Hugh@Pixlerlaw.com
Attorney for Plaintiff

Plaintiff's address:

21404 E. 51st Ave.
Denver, CO 80249